UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

IN RE:

RICHARD J. PERLBERG and,
TAMELA J. MOORE,

CASE NO.: 3:11-BK-5983PMG

Debtors.

_____

## MOTION FOR RELIEF FROM STAY

The Movants, JOHN L. HOLLAND and J.D. HOWELL, INC. a Florida corporation, request this Court to annul the automatic stay, and in support thereof would show unto the Court the following:

1.    On May 15, 2007, a Mortgage and Note were created encumbering the property located in Clay County, Florida, described as:

> **See Exhibit A attached hereto and by this reference made a part hereof.**

2.    The Mortgage and Note secured payment of the original principal amount of $105,000.00.  Movants are the owners and holders of the Mortgage and Note attached hereto as Exhibit "A".

3.    There was a default under the Mortgage and Note in that the payment due November 1, 2010 has not been paid, nor the taxes or insurance.

4.    Since the filing of the petition herein neither the Debtor nor the Trustee has proposed any means of adequate protection of the Movants' interest in the property.

5.    If the Court is unwilling to enter an Order lifting the automatic stay, the Movants request the entry of an adequate protection Order which should include not only a payment of

principal and interest, but, also, a payment for taxes and insurance, items which are not being currently paid by the Debtor, the 2010 taxes now being delinquent.

WHEREFORE, the Movants respectfully request that this Court grant its Motion for Relief from Stay, issue its Order annulling the stay and permitting the Movants to seek the completion of the foreclosure of its Mortgage and Note in the State Court or in the alternative, enter an Order for adequate protection to include payment at a default rate, payment of the taxes and insurance coverage, attorneys fees and for such other relief as appears lawful, equitable and just.

## CERTIFICATE OF SERVICE

I HEREBY certify that a copy of the foregoing has been furnished to:
Richard J. Perlberg, nka Juan E. Perlberg
Tamela J. Moore, aka Tamela J. Perlberg
a/k/ Tamela J. Moore-Perlberg
5675 Pine Avenue
Fleming Island, Florida  32003

Joshua J. Tejes, Esquire
1309-105 Saint Johns Bluff Road, North
Jacksonville, Florida  32225

Douglas W. Neway, Trustee
P.O. Box 4308
Jacksonville, Florida  32201

Asst. US Trustee
135 West Central Blvd.
Suite 620
Orlando, Florida  32801
by U.S. mail this _____ day of September, 2011.

LAW OFFICE OF LAWRENCE J. BERNARD

By: _____
LAWRENCE J. BERNARD, ESQUIRE
Attorney for Movants
450-5 Busch Drive
Jacksonville, Florida 32218
(904) 751-6980
Fla. Bar #248436

## EXHIBIT "A"

PARCEL 1:

A PORTION OF LOT 2, HARVEY GRANT, SECTION 41, TOWNSHIP 5 SOUTH, RANGE 26 EAST, CLAY COUNTY, FLORIDA, ACCORDING TO MAP OF SAID HARVEY GRANT, RECORDED IN THE PUBLIC RECORDS OF SAID COUNTY, IN DEED BOOK G, PAGE 89 OF SAID PARCEL BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS: FOR A POINT OF REFERENCE COMMENCE AT THE INTERSECTION OF THE NORTH LINE OF SAID LOT 2 WITH THE EAST LINE OF COUNTY ROAD NO. C-15-A (PINE AVENUE) FORMERLY STATE ROAD NO. C-15-A; THENCE SOUTH 01 DEGREES 15 MINUTES 14 SECONDS EAST, ALONG SAID EAST LINE, 412.00 FEET; THENCE NORTH 88 DEGREES 25 MINUTES 16 SECONDS EAST, 247.75 FEET TO THE POINT OF BEGINNING; THENCE NORTH 01 DEGREES 15 MINUTES 14 SECONDS WEST, 206.05 FEET; THENCE NORTH 88 DEGREES 21 MINUTES 44 SECONDS EAST, 1462.00 FEET MORE OR LESS TO THE WATERS OF THE ST. JOHNS RIVER; THENCE SOUTHERLY ALONG THE MEANDERINGS OF SAID WATERS 206.0 FEET MORE OR LESS TO AN INTERSECTION WITH A LINE BEARING NORTH 88 DEGREES 22 MINUTES 25 SECONDS EAST FROM THE POINT OF BEGINNING; THENCE SOUTH 88 DEGREES 22 MINUTES 25 SECONDS WEST ALONG LAST SAID LINE 1480 0 FEET MORE OR LESS TO THE POINT OF BEGINNING.

EXCEPT ANY PART RECORDED IN OFFICIAL RECORDS VOLUME 1721, PAGE 1955 OF THE PUBLIC RECORDS OF CLAY COUNTY, FLORIDA.

CFN # 2007036828, OR BK 2909  Pages 1183 - 1188, Recorded 06/14/2007 at 01:34 PM, James B. Jetter Clerk of Circuit Court Clay County Florida Recording $52.50 Doc. Mtg. Tax $210.00  Deputy Clerk WESTA

Case 3:11-bk-05983-PMG   Doc 14   Filed 09/07/11   Page 4 of 9

145943

THIS INSTRUMENT PREPARED BY:
Fortress Title, LC
Tina Townsend
8777 San Jose Boulevard, Suite 205
Jacksonville, FL 32217

RECORD AND RETURN TO:
Fortress Title, LC
8777 San Jose Boulevard, Suite 205
Jacksonville, FL 32217

# MORTGAGE

**This Mortgage** ("Security Instrument") is given this **15th day of May, 2007**. The Mortgagor is **Richard J Perlberg and Tammy M. Perlberg, husband and wife** whose address is **5675 Pine Ave., Orange Park, FL** hereinafter called the Borrower. This Security Instrument is given to **J. D. Howell, Inc. and John L. Holland** whose address is **835 Bishop Ct., Brimingham, AL 35242** hereinafter called the Lender. Borrower owes Lender the principal sum of **One Hundred Five Thousand and No/100 Dollars (U.S. $105,000.00)**. This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), a true and correct copy of which is attached and made a part hereof. If not paid earlier, this debt is due and payable on June 1, 2022.

This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications; (b) the payment of all other sums, with interest, advanced to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property located in Clay County, **Florida**:

**SEE EXHIBIT "A" ATTACHED HERETO AND BY REFERENCE MADE APART HEREOF.**

which has the address of **5675 Pine Ave., Orange Park, FL**:

**Together With** all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, rents, royalties, mineral, oil and gas rights and profits, water rights and stock and all fixtures now or hereafter a part of the property, including, whether attached or detached, all elevators, all gas, steam, electric or other heating, lighting, plumbing, ventilating, sprinkling, irrigating, water and power systems, appliances, storm and screen windows and doors, fixtures and apparatus. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

**Borrower Covenants** that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower fully warrants and will defend generally the title to the Property against all claims and demands of all persons whomsoever, subject to any encumbrances of record.

Borrower and Lender covenant and agree as follows:

**Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note. If any first lien mortgage becomes deliquent this mortgage will be considered in default.

**Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender shall be applied: first, to late charges due under the Note; second, to prepayment charges due under the Note; third, to amounts payable under this Security Instrument for escrow items, if applicable; fourth, to Interest due; and last, to principal due.

**Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided for payment of escrow items, if applicable, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment.
Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments. Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien or forfeiture of any part of the Property; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property Insured against loss by fire, hazards included within the term "extended coverage" and any other hazards for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance
shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld.
All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly

give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of any payments referred to in the Note or this Security Instrument or change the amount of the payments. If, after default, the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

**Preservation and Maintenance of Property; Leaseholds.** Borrower shall not destroy, damage or substantially change the Property, allow the Property to deteriorate or commit waste. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease, and if Borrower acquires fee title to the Property, the leasehold and fee title shall not merge unless Lender agrees to the merger in writing.

**Protection of Lender's Rights in the Property; Mortgage Insurance.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect the Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the insurance in effect until such time as the requirement for the insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

**Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned
and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of any payments referred to in the Note or in this Security Instrument or change the amount of such payments.

**Borrower Not Released; Forbearance by Lender Not a Waiver.** Extension of the time for payment or modification of amount or the term for repayment of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify the terms for repayment of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to any rights of Lender to require immediate payment in full of all sums secured by this Security Instrument. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note:
(a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any

accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**Legislation Affecting Lender's Rights.** If enactment or expiration of applicable laws has the effect of rendering any provision of the Note or this Security Instrument unenforceable according to its terms, Lender, at its option, may require immediate payment in full of all sums secured by this Security Instrument and may invoke any remedies permitted by the Note or this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**Governing Law Severability.** This Security Instrument shall be governed by the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**Acceleration; Remedies.** Should Borrower breach any covenant or agreement in this Security Instrument, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Security Instrument, including, but not limited to, costs of abstracts, appraisals, surveys, testing of any nature, repairs, replacements, insurance, environmental assessments, appraisals, tests and remedial action, title searches, title correction, and reasonable attorneys' fees and costs of title evidence.

**Lender in Possession.** Upon acceleration by Lender or abandonment of the Property, Lender (by judicially appointed receiver) shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. Any rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds, and reasonable attorneys' fees, and then to the sums secured by this Security Instrument.

**Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**Attorneys' Fees.** As used in this Security Instrument and the Note, "attorneys' fees" shall include any attorneys' fees awarded by an appellate court, including fees incurred in a Bankruptcy proceeding initiated by the mortgagor.

**Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.

OR BK 2909 PG 1186

**By Signing Below,** Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

_TINA M Townsend_
Witness

_Charlene J. Payne_
Charlene F. Payne
Witness

Richard J Perlberg
5675 Pine Ave.
Orange Park, Fl.

_TINA M. Townsend_
Witness

_Charlene J. Payne_
Charlene F. Payne
Witness

_Tammy M Perlberg_
Tammy M. Perlberg
5675 Pine Ave.
Orange Park, Fl.

STATE OF **Florida**
COUNTY OF **Duval**

The foregoing instrument was executed and acknowledged before me this 15th day of May, 2007 by Richard J Perlberg and Tammy M. Perlberg. He/She/They have produced _FL DL-LIC_ as identification.

Notary Public, County and State Aforesaid

Notary Printed Signature

My commission expires:_____

TINA M. TOWNSEND
Notary Public, State of Florida
My comm. exp. June 26, 2008
Comm. No. DD 315931

## EXHIBIT "A"

PARCEL 1:

A PORTION OF LOT 2, HARVEY GRANT, SECTION 41, TOWNSHIP 5 SOUTH, RANGE 26 EAST, CLAY COUNTY, FLORIDA, ACCORDING TO MAP OF SAID HARVEY GRANT, RECORDED IN THE PUBLIC RECORDS OF SAID COUNTY, IN DEED BOOK G, PAGE 89 OF SAID PARCEL BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:  FOR A POINT OF REFERENCE COMMENCE AT THE INTERSECTION OF THE NORTH LINE OF SAID LOT 2 WITH THE EAST LINE OF COUNTY ROAD NO. C-15-A (PINE AVENUE) FORMERLY STATE ROAD NO. C-15-A; THENCE SOUTH 01 DEGREES 15 MINUTES 14 SECONDS EAST, ALONG SAID EAST LINE, 412.00 FEET; THENCE NORTH 88 DEGREES 25 MINUTES 16 SECONDS EAST, 247.75 FEET TO THE POINT OF BEGINNING; THENCE NORTH 01 DEGREES 15 MINUTES 14 SECONDS WEST, 206.05 FEET; THENCE NORTH 88 DEGREES 21 MINUTES 44 SECONDS  EAST, 1462.00 FEET MORE OR LESS TO THE WATERS OF THE ST. JOHNS RIVER; THENCE SOUTHERLY ALONG THE MEANDERINGS OF SAID WATERS 206.0 FEET MORE OR LESS TO AN INTERSECTION WITH A LINE BEARING NORTH 88 DEGREES 22 MINUTES 25 SECONDS EAST FROM THE POINT OF BEGINNING; THENCE SOUTH 88 DEGREES 22 MINUTES 25 SECONDS WEST ALONG LAST SAID LINE 1480.0 FEET MORE OR LESS TO THE POINT OF BEGINNING.

EXCEPT ANY PART RECORDED IN OFFICIAL RECORDS VOLUME 1721, PAGE 1955 OF THE PUBLIC RECORDS OF CLAY COUNTY, FLORIDA.

# MORTGAGE NOTE

Loan Amount: **$105,000.00**

Date: **May 15, 2007**

For value received, the undersigned **Richard J Perlberg and Tammy M. Perlberg,** promise to pay to the order of **J. D. Howell, Inc. and John L. Holland** the principal sum of **One Hundred Five Thousand and No/100 Dollars (U.S. $105,000.00)** with interest thereon at the rate of **13.0%** per annum from date until maturity, said interest being payable as stated herein, both principal and interest being payable in lawful money of the United States of America at , **835 Bishop Ct., Brimingham, AL 35242,** or at such other address as the holder from time to time may specify by written notice to the maker, said principal and interest to be paid on the date and in the manner following:

**In consecutive installments of $1,328.50 each, commencing on July 1, 2007, and continuing in a like amount, until the whole of said sum including interest as specified herein, has been paid in full. Each installment shall first be applied to payment of the accrued interest and the remainder, if any, shall be applied to payment of the principal from time to time remaining unpaid.**

**Privilege is reserved herein to prepay in whole or in part at any time after the 36th payment without penalty or fee. If a prepayment of the principle balance is made in the first 12 months the prepayment penalty will be 5% of the existing principle balance. If a prepayment of the principle balance is made in the second 12 months the prepayment penalty will be 3% of the existing principle balance. If a prepayment of the principle balance is made in the 3rd 12 months the prepayment penalty will be 1% of the existing principal balance. If a prepayment is charged it will be in addition to the FINAL payment at maturity of this note or at such time the entire principal and any interest due is paid in full .**

**The maker(s) agree herein to pay to the holder(s) hereof, a late charge/penalty of 10% on any installment not paid within 10 days after the installment is due.**

This note is to be construed and enforced according to the laws of the State of **Florida,** and is secured by a mortgage on real estate of even date herewith.

If default be made in the payment of any of said sums or interest or in the performance of any agreements contained herein or in the said mortgage then, at the option of the holder of the same, the principal sum then remaining unpaid with accrued interest shall immediately become due and collectible without notice, time being of the essence of this contract, and said principal sum and said accrued interest shall both bear interest at the maximum rate per annum allowed by law, from such time until paid.

Each maker and endorser waives presentment, protest, notice of protest and notice of dishonor and agrees to pay all costs, including a reasonable attorney's fee, whether suit brought or not, if counsel shall, after maturity of this note or default hereunder or under said mortgage, be employed to collect this note or to protect the security thereof.

**Documentary tax has been paid and proper stamps have been affixed to the Mortgage.**

‑ Richard J Perlberg

Tammy M. Perlberg